IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA | PLAINTIFF/RESPONDENT |
| V.    No.  5:06-CR-50071-JLH     No.  5:08-CV-05145-JLH | |
| CLAUDIO MENDOZA | DEFENDANT/PETITIONER |

**REPORT AND RECOMMENDATION**

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petitions (Doc. 35) filed June 24, 2008 under 28 U.S.C. Section 2255. The Government filed its Response (Doc. 38) on July 25, 2008 and the Petitioner filed a Reply (Doc. 47) on September 3, 2008.

**I. Background**

On October 23, 2006, a Complaint was filed alleging that Claudio Mendoza distributed methamphetamine. (Doc.1) The Complaint was accompanied with an Affidavit of Florencio Rivera, a DEA Special Agent. On October 26, 2006, Mendoza appeared with Attorney James Pierce before U.S. Magistrate Judge Beverly Stites Jones for his initial appearance. (Doc. 3) On November 9, 2006, an order was entered granting Patricia Jean Fletcher leave to appear as attorney for Mendoza. (Doc. 8) On November 15, 2006, the petitioner, Claudio Mendoza, was named in a one-count Indictment filed in the United States District Court for the Western District of Arkansas. (Doc. 12) The one-count Indictment charged that Mendoza did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to the Grand Jury to distribute a controlled substance, namely, methamphetamine, a Schedule II

controlled substance, in violation of 21 U.S.C. § 841(a)(1) and § 846. Id.

On November 20, 2006, Petitioner appeared for arraignment with retained counsel, Patricia Jean Fletcher, before the Honorable Beverly Stites Jones, United States Magistrate Judge, in Fort Smith. Defendant was advised of his rights, and the charges and penalties were set forth. Petitioner entered a plea of not guilty and trial was set for January 8, 2007, before the Honorable Jimm Larry Hendren, Chief United States District Judge, in Fayetteville. Defendant was ordered detained pending further proceedings. (Doc. 13) On February 16, 2007, Petitioner appeared with retained counsel, Janet Spencer, before Honorable Jimm Larry Hendren, Chief United States District Judge, in Fayetteville, for a change of plea hearing. A written plea agreement was presented wherein defendant would plead guilty to the Indictment and, in return, the government agreed not to recommend a specific sentence, not to object to a reduction for acceptance of responsibility, and to move for the third point for acceptance, if applicable. The plea agreement included a stipulation that the defendant should be held accountable for a drug quantity in excess of 1.5 kilograms of a mixture or substance containing methamphetamine. Defendant's rights were explained to him and the penalties were set forth. The Court reviewed the plea agreement with Petitioner and then expressed tentative approval of the plea agreement. A factual basis was set forth to which defendant agreed. Defendant then formally entered his plea of guilty to the Indictment. The Court accepted defendant's plea and ordered a presentence report. Petitioner was remanded to custody pending sentencing. (Doc. 31)

The Probation Office issued Petitioner's Pre-Sentence Report. Consistent with the drug quantity stipulation contained in the Plea Agreement, the PSR assessed a base offense level of 32. (PSR ¶ 24) The PSR gave Petitioner a 3-point reduction for acceptance of responsibility

(PSR ¶¶ 30, 31) resulting in a Total Offense level of 29. (PSR ¶ 32) Petitioner was assessed zero points of criminal history, putting him in the criminal history category I. (PSR ¶ 35) The resulting advisory guideline range was 87 to 108 months. (PSR ¶ 51) On May 8, 2007, the government advised that they had no objections to the PSR. On June 6, 2007, Petitioner advised through his attorney of record, Janet Spencer, that the defendant has the following objections to the presentence report. In the first objection, the defendant objected to paragraph 27 of the report in that no reduction was made for his role in the offense. Defendant contended that from the stipulated facts and according to the offense conduct that his role was minimal and he should receive a 4-level reduction. In the second objection, the defendant objected to paragraph 24 of the report and contended the base offense level should be 26 or if using the quantity in the report, then the base offense level should be 30. In the final objection, the defendant objected to paragraph 25 of the report in that defendant did not receive a "safety valve" adjustment. Defendant contended he cooperated and provided all information known to him regarding this matter and thus qualified for the "safety valve" (See PSR addendum dated June 12, 2007)

On June 20, 2007, Petitioner appeared for sentencing. The district court adopted the advisory guideline range as set forth in the PSR and sentenced Petitioner to a bottom-of-the guideline-range sentence of 87 months imprisonment, three years supervised release, $3,500.00 fine with interest waived, and $100 special assessment. (Docket #33, #34) Petitioner did not appeal his conviction or sentence.

Petitioner filed this Motion to Vacate, Set Aside, or Correct under 28 U.S.C. section 2255 (Doc. 35) on June 24, 2008 and raises four grounds. Petitioner contends in Ground One that he had ineffective assistance of counsel, Ground Two that he failed to receive the safety valve

provision, Ground Three that he did not get proper credit for his "minimum participation", and Ground Four that his plea of guilty was coerced. The Petitioner also raised the argument that his attorney failed to appeal the sentence.

## II.  Discussion

### Ground One: Ineffective Assistance of Counsel.

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense) Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Strickland, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997)

**Claimed Intimidation:**

The Petitioner contends that his lawyer was ineffective in the following regards. He claims that "my lawyer told me that if I plead guilty the judge will not be mad with me, if I say something negative about my layer you (the judge) will be very mad with me and you can give me more than 20 years".

The Petitioner was arraigned on November 20, 2006 and appeared with his retained counsel. The range of penalties would have been disclosed to the Petitioner at that time. The Petitioner signed a Plea Agreement (Doc. 30) and entered a change of plea on February 16, 2007. The maximum penalties were set out in the Agreement and showed a maximum term of imprisonment for 20 years or a maximum fine of $1,000,000.00 or both. At the sentencing hearing the court did ask the Petitioner if he was satisfied with the services rendered by his attorney and he responded that he was, and that he had an adequate amount of time with his attorney. (Doc. 37, p. 5) The Petitioner acknowledged that the Plea Agreement was translated from English, that he discussed it with his attorney and that he understood the agreement. (Doc. 37, p. 6-7) The Petitioner stated that court specifically stated to the Petitioner that it would be up to the court to determine a proper punishment (Doc. 37, p. 8) and that he could be sentenced for up to 20 years in prison or fined up to $1,000,000 or both. (Doc. 37, p.9)

A sentencing hearing was conducted on June 20, 2007. At the hearing the Petitioner again stated that he was satisfied with his attorney and that he had adequate time to confer with her. (Doc. 37, p. 20) At the hearing the Petitioner had three objection to the pre sentence report contending that 1) the Petitioner should have received a four-level reduction for being a minimal participant, 2) that the offense level should be reduced from 30 to 26 and 3) that the Petitioner should be given a safety valve adjustment.

The law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences. *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir.1994). Furthermore, a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence. See *Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir.1990).

A defendant bears the burden of showing that counsel's actions were not sound strategy, *United States v. Hill*, 864 F.2d 601 (8th Cir. 1988), and Petitioner has not shown that counsel's advising him to accept a plea was not sound strategy. Counsel was well aware that judicial fact-finding based upon a preponderance of the evidence standard remains permissible in sentencing even after Booker, provided that the guidelines are applied in an advisory manner. *United States v. Wade*, 435 F.3d 829, 831 (8th Cir. 2006) (per curiam); see also *United States v. Pirani*, 406 F.3d 543, 551 n. 4 (8th Cir. 2005) (en banc)("Nothing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime."); *United States v. Haack*, 403 F.3d 997, 1003 (8th Cir. 2005) ("In determining the appropriate guidelines sentencing range to be considered as a factor under [18 U.S.C.] § 3553(a), we see nothing in Booker that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-Booker."). By stipulating to a limit as to the drug quantity and pleading guilty, Petitioner received a great benefit. Defense counsel's advice and performance did not fall "below an objective standard of reasonableness".

**Failure to File Appeal:**

If an attorney has consulted with his client about an appeal, he will not be found ineffective unless he fails to follow "express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to § 2255 relief. *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000) Where the defendant expressly requests that his counsel file an appeal and counsel fails to do so, thereby depriving the defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal. See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo,* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007)

For such a claim to succeed, however, the client must show that he instructed his counsel to file an appeal. *Id*. A bare assertion by the petitioner that he made such a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition. *Id.* Moreover, "ineffective assistance of counsel cannot be presumed from the failure to advise that an appeal be taken ..." *United States v. Neff*, 525 F.2d 361, 364 (8th Cir. 1975). Where the record indicates that defense counsel did consult with the client about the right to file an appeal, and there is an absence of any evidence in the record to counter defense counsel's testimony that he never received express instructions from the client about an appeal, the client cannot make out an ineffective assistance claim, and cannot show that the district court is required to hold an evidentiary hearing. *United States v. Arvizu*, 270 F.3d 605, 606 (8th Cir. 2001)

The Petitioner contended that "I leave everything in the hands of my lawyer but he not

even submit an appeal even he told the judge that she will do it for me". The record of the proceedings is not consistent with Petitioner's contention that his attorney told the Judge that she would file an appeal. The District Court informed Petitioner of his right to appeal and that he must file an appeal within 10 days. (Doc. 37, p. 53;Sentencing Hrg. Tr., p. 51) Petitioner responded that he understood his appeal rights. Id. The District Court informed Petitioner that if he wished to appeal and could not afford to do so, that he could apply to the Court to appeal without payment of costs. Id. The District Court also informed him that if he qualified, that his attorney could be paid for. (Doc. 37, p. 54;Sentencing Hrg. Tr., p. 52) Petitioner stated to the District Court that he understood those rights. Id. The District Court informed Petitioner directly of these rights and Petitioner responded to the Court's questions directly through the interpreter. Although his attorney was present, she did not respond in any way to the Court's references to an appeal and she certainly did not make an assertion that she would appeal the sentence.

The Petitioner's assertions in his petition (Doc. 35, p. 6) do not rise to the level of an unequivocal statement to his attorney to appeal the judgment and the evidence is clear from the record that his attorney did not make a statement to the court that she would appeal the judgment.

### Ground Two: Safety Valve

Petitioner also argues that his sentence was unlawful because he did not receive the benefit of the "safety valve." This argument is procedurally barred. This argument could have been raised in a direct appeal but Petitioner failed to directly appeal his conviction or sentence. Because habeas relief is an extraordinary remedy which will not be allowed to do service for an appeal, significant barriers exist in the path of a petitioner who seeks to raise an argument collaterally which he failed to raise on direct review. *United States v. Moss*, 252 F.3d 993, 1001

(8th Cir. 2001)(citing *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) "More specifically, a claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." Id.; see also, i.e. *Swedzinski v. United States*, 160 F.3d 498, 500 (8th Cir. 1998)(where issue is raised for the first time in a § 2255 motion and petitioner did not raise the issue at trial or on direct appeal, the issue is procedurally defaulted.)

Petitioner's arguments fall well short of establishing that he suffered any "actual prejudice." even if cause was assumed. See, i.e. *Dalton v. United States*, 862 F.2d 1307, 1310 (8th Cir. 1988)(citing *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)) (in order to demonstrate the "actual prejudice" required to excuse a procedurally defaulted claim, a post-conviction petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.") Petitioner cannot demonstrate that he was actually prejudiced by the district court's failure to find that Petitioner should receive the benefit of the "safety valve." *United States v. Wade*, 435 F.3d 829, 831 (8th Cir. 2006) (per curiam); see also i.e. *United States v. Morell*, 429 F.3d 1161, 1163 (8th Cir. 2005)(where the record establishes that the guidelines were applied in an advisory manner, the district court does not err in finding facts that enhance the advisory guidelines sentence.)

Even if not procedurally barred there is no merit to the Petitioner's claim.  DEA Special Agent Rivera testified that after his arrest, Petitioner would not respond to the name that he went by when officers called to him. (Sentencing Tr., pp. 28-29) Petitioner's attorney allowed him to

be interviewed by the officers. At this interview, Petitioner would give no information, stating that he did not want to cause problems for anybody else. (Sentencing Tr.pp. 29-31) Based upon his investigation, Agent Rivera testified that Petitioner had substantial knowledge of the drug trafficking but would not reveal it. (Sentencing Tr., pp. 33-34) Petitioner made trips to Dallas to pick up methamphetamine to bring into Northwest Arkansas. He made numerous deliveries in Northwest Arkansas of pound quantities of methamphetamine; however, he refused to disclose any of this information to the DEA. His car had $200,000 hidden in a secret compartment but he would give the DEA no information concerning that money.

The District Court correctly found that Petitioner was not entitled to the "safety valve" because he did not provide all information concerning his involvement in the offense to law enforcement as required. The District Court stated that Petitioner ". . . has been rather closed-mouth about his operation . . . and his activities." (Doc. 37, p. 45;Sentencing Tr., p. 43) After hearing the evidence presented at the Sentencing Hearing, the District Court made a finding of fact and law that Petitioner had not done all that is required to merit the "safety valve" provision. Id.

**Ground Three: Minimum Participation**

Petitioner also argues that his sentence was unlawful because he did not receive the benefit of being classified a minimum participant. This argument is also procedurally barred. This argument could have been raised in a direct appeal but Petitioner failed to directly appeal his conviction or sentence.

Petitioner's counsel objected to the presentence report, contending that Petitioner should have received a 4-level reduction because his role was minimal pursuant to Section 3B1.1. As

noted by the Probation Officer, this reduction is for defendants who are plainly among the least culpable of those involved. Under this provision, a defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. However, as the Probation Officer noted, Petitioner not only had knowledge and understanding of the scope and structure of the drug trafficking activities, but was quite involved with these drug trafficking activities. (PSR, Addendum)

Agent Rivera testified that Petitioner was substantially involved in drug trafficking. Codefendants stated that they had been to Petitioner's house and picked up pound quantities of methamphetamine. Co-defendants stated they knew Petitioner under a different name, Chaparitto, and that he was involved in methamphetamine sales in Northwest Arkansas. $200,000 was found in a secret compartment in a vehicle titled to Petitioner. A source for methamphetamine in Dallas informed the DEA that Petitioner had been to Dallas on multiple occasions to pick up pound quantities of methamphetamine. (Doc. 37, p 33-35; Sentencing Tr., pp 31-33)

Agent Rivera testified that an individual picked up a pound of methamphetamine from Petitioner for distribution in Missouri and Iowa. This transaction was discussed over a telephone being monitored by the DEA and the individual who picked up the methamphetamine from Petitioner's home was under surveillance. (Doc. 37, p. 35; Sentencing Tr., p. 33)

The District Court found that the evidence presented at the Sentencing Hearing and uncontested Presentence Report established that Petitioner was actively involved in the entire drug operation. (Doc. 37, p. 43-44; Sentencing Tr., pp. 41-42) The District Court noted the various factors which proved that Petitioner was actively involved in the distribution of pounds

of methamphetamine into Northwest Arkansas. Id.

### Ground Four: Coerced Plea

Petitioner specifically contends that his counsel told him that . . . "he told me that he already talk to the Court and I will get no more than five years, so I plead guilty. If I know that I can get more than that, I never accepted the deal." (Docket 36, p. 8, para. 12D)

Petitioner stated at the Plea Hearing that he understood the if he pled guilty, the sentence was up to the Court and the Court did not know what the sentence would be. (Plea Hearing Tr., p. 6) Petitioner stated that he understood that if he pleaded guilty that he could be sentenced up

After the Court sentenced Petitioner to 87 months imprisonment, the Court asked if Petitioner had objections to the sentence. His attorney answered, "No." (Doc. 37, p. 6;Sentencing Tr., p. 51) The District Court then advised Petitioner of his right to appeal, and Petitioner replied that he understood those rights. Id. Petitioner had just been sentenced to 87 months but failed to raise any objection to that sentence. If he had pled guilty with the promise to receive no more than five years, it is probable that he would have stated that to the Court. He had the opportunity to do so and did not.

The record does not reflect any coercion of Petitioner as set forth above. In fact, Petitioner stated to the Court that he entered into the plea agreement voluntarily without threat and understood the terms of it. (Doc. 37, p. 6-7; Plea Hrg., pp. 4-5) The Plea Agreement was translated into Spanish before he signed it. Id. The Plea Agreement specifically provided that Petitioner faced a maximum term of imprisonment for 20 years. (Doc. 30, p. 5; Plea Agreement, para. 9) It specifically provided that the defendant agreed that any discussions as to a possible guideline range were attempts to guess what may be the guideline range and the District Court

was not bound by such a guess. (Doc. 30, p. 6; Plea Agreement, para. 12) It provided that Petitioner acknowledged that the actual range may be greater than contemplated by the parties and that such a fact would not give him the right to withdraw his plea. Id. Petitioner acknowledged that he had not been threatened or coerced into changing his plea to guilty. (Doc. 30, p. 8; Plea Agreement, para. 23) Petitioner also acknowledged that "there are no oral agreements or promises which have been made" to induce him to change his plea to guilty. (Doc. 30, p. 9) It is incredulous that the Petitioner assets in the Plea Agreement that no promise has been made to him, confirms that at the Plea Hearing and then does not asset it at the Sentencing Hearing.

### Evidentiary Hearing

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998)

The court finds that the record of the case does establish conclusively that the Petitioner is not entitled to an Evidentiary Hearing.

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. Section 2255, be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 22nd day of October 2008

                                            /s/ J. Marschewski
                                            HONORABLE JAMES R. MARSCHEWSKI
                                            UNITED STATES MAGISTRATE JUDGE