IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA | PLAINTIFF/RESPONDENT |
| V.     No. 5:06-CR-50071-JLH       No. 5:08-CV-05145-JLH | |
| CLAUDIO MENDOZA | DEFENDANT/PETITIONER |

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus Petition (Doc. 35) filed June 24, 2008 under 28 U.S.C. § 2255. The Government filed its Response (Doc. 38) on July 25, 2008 and the Petitioner filed a Reply (Doc. 47) on September 3, 2008. The court entered an initial Report and Recommendation (Doc. 48) on October 22, 2008 which was adopted in part and denied in part by Order (Doc. 52) entered July 10, 2009. A hearing was conducted on November 23, 2009.

### I. Background

On October 23, 2006, a Complaint was filed alleging that Claudio Mendoza distributed methamphetamine. (Doc.1) The Complaint was accompanied with an Affidavit of Florencio Rivera, a DEA Special Agent. On October 26, 2006, Mendoza appeared with Attorney James Pierce before U.S. Magistrate Judge Beverly Stites Jones for his initial appearance. (Doc. 3) On November 9, 2006, an order was entered granting Patricia Jean Fletcher leave to appear as attorney for Mendoza. (Doc. 8).

On November 15, 2006, the petitioner, Claudio Mendoza, was named in a one-count Indictment filed in the United States District Court for the Western District of Arkansas. (Doc.

12) The one-count Indictment charged that Mendoza did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to the Grand Jury to distribute a controlled substance, namely, methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and § 846 between August 17, 2006 and October 18, 2006. Id.

On November 20, 2006, Petitioner appeared for arraignment with retained counsel, Patricia Jean Fletcher, before the Honorable Beverly Stites Jones, United States Magistrate Judge, in Fort Smith. Defendant was advised of his rights, and the charges and penalties were set forth. Petitioner entered a plea of not guilty and trial was set for January 8, 2007, before the Honorable Jimm Larry Hendren, Chief United States District Judge, in Fayetteville. Defendant was ordered detained pending further proceedings. (Doc. 13) On February 16, 2007,

Petitioner appeared with retained counsel, Janet Spencer, before Honorable Jimm Larry Hendren, Chief United States District Judge, in Fayetteville, for a change of plea hearing. A written plea agreement was presented wherein defendant would plead guilty to the Indictment and, in return, the government agreed not to recommend a specific sentence, not to object to a reduction for acceptance of responsibility, and to move for the third point for acceptance, if applicable. The plea agreement included a stipulation that the defendant should not be held accountable for a drug quantity in excess of 1.5 kilograms of a mixture or substance containing methamphetamine.

Defendant's rights were explained to him and the penalties were set forth. The Court reviewed the plea agreement with Petitioner and then expressed tentative approval of the plea agreement.  A factual basis was set forth to which defendant agreed. The factual basis stated that the DEA had intercepted wire communications between Defendant and  Baudilio Castillo on

various occasions between August 17th and August 30th, 2006 where Defendant agreed to provide a quantity of methamphetamine to Silas Noriega.  Subsequent to additional wire interceptions the DEA followed Mr. Noriega to Mr. Mendoza home where a quantity of methamphetamine was delivered to Mr. Noriega by Mr. Mendoza. (Doc. 30, p. 4).  The Defendant was asked by the court if he had read and understood the factual basis and he stated that he did. (Doc. 37, p. 9).

  Defendant then formally entered his plea of guilty to the Indictment. The Court accepted defendant's plea and ordered a presentence report. Petitioner was remanded to custody pending sentencing. (Doc. 31)  The Probation Office issued Petitioner's Pre-Sentence Report on May 2, 2007. Consistent with the drug quantity stipulation contained in the Plea Agreement, the PSR assessed a base offense level of 32. (PSR ¶ 24) The PSR gave Petitioner a 3-point reduction for acceptance of responsibility (PSR ¶¶ 30, 31) resulting in a Total Offense level of 29. (PSR ¶ 32) Petitioner was assessed zero points of criminal history, putting him in the criminal history category I. (PSR ¶ 35) The resulting advisory guideline range was 87 to 108 months. (PSR ¶ 51) On May 8, 2007, the government advised that they had no objections to the PSR. On June 6, 2007, Petitioner advised through his attorney of record, Janet Spencer, that the defendant has the following objections to the presentence report. In the first objection, the defendant objected to paragraph 27 of the report in that no reduction was made for his role in the offense. Defendant contended that from the stipulated facts and according to the offense conduct that his role was minimal and he should receive a 4-level reduction. In the second objection, the defendant objected to paragraph 24 of the report and contended the base offense level should be 26 or if using the quantity in the report, then the base offense level should be 30. In the final objection, the defendant objected to paragraph 25 of the report in that defendant did not receive a "safety

valve" adjustment.  Defendant contended he cooperated and provided all information known to him regarding this matter and thus qualified for the "safety valve" (See PSR addendum dated June 12, 2007).

On June 20, 2007, Petitioner appeared for sentencing. The district court adopted the advisory guideline range as set forth in the PSR and sentenced Petitioner to a bottom-of-the-guideline-range sentence of 87 months imprisonment, three years supervised release, $3,500.00 fine with interest waived, and $100 special assessment. (Docket #33, #34) Petitioner did not appeal his conviction or sentence.

Petitioner filed this Motion to Vacate, Set Aside, or Correct under 28 U.S.C. § 2255 (Doc. 35) on June 24, 2008 and raises four grounds.  Petitioner contends in Ground One that he had ineffective assistance of counsel because his attorney coerced him to plea and she failed to file an appeal. Ground Two that he failed to receive the safety valve provision, Ground Three that he did not get proper credit for his "minimum participation", and Ground Four that his plea of guilty was coerced.

A Report and Recommendation (Doc. 48) was filed on October 22, 2008.  The Defendant filed his Objection to Report and Recommendation (Doc. 51) on January 5, 2009 and the court entered an order (Doc. 52) adopting the R&R as to the finding that the defendant was not coerced into entering a plea but referring the matter for further consideration on the defendant's other claims.

The court appointed counsel (Doc. 60) for the defendant and an evidentiary hearing was conducted on the Petition on November 23, 2009.  At the hearing Claudio Mendoza the defendant, Janet Spencer his attorney, Donna Brown the officer that prepared the PSR and officer

Florencio Revera with the DEA testified.

## II.  Discussion

**Claudio Mendoza testified as follows:**

Defendant stated that he filed the current petition on June 24, 2009 and listed four grounds.  Ineffective Assistance of Counsel, Safety Valve, Minimum participant and attorney coerced me into pleading.

I entered a plea of guilty because if I did not I could get up to 20 years.  My attorney came up with 5yrs and told me I would do 2 ½. I signed for 60 months.  I signed a paper which stated I would only get 60 months.  I had a conversation with my attorney before I signed the plea agreement.  She may have read the paper to me.  We never spoke about a trial. There was no chance at trial I had only 50% chance.  I don't remember if she told me I could go to trial.  I don't remember the quantity of the drugs because I just wanted to get out of this problem and I didn't want to know anything else about it.  I wanted to do my time in federal.

I had no problem understanding my attorney.  I spoke with her about three times. The judge asked me if I understood what I was doing and I told him I was satisfied with my attorney. What else could I do.  The judge did question me about the plea agreement and I told him it had been explained to me.  He did ask me if I had discussed it throughly and I told him yes and that I understood it.  I told the judge I understood because it was the first time with this offense and all these problems so I had to say yes.  No one told me to answer yes but I had to say yes because if I said no my case would take longer.  I do not remember telling you that someone told me that I had to respond yes to the judge's questions only that I had to respond yes or no.

I tried to pay attention to the judge when he asked me questions.  My goal in answering

the questions was to get out of there of that place where I was in prison to go and do my time where I knew I was going to do better.

I got the information that I would do the 2 ½ was information my attorney told me. She told me that before I signed for the 60 months. My attorney advised me to take drug classes but it did not count for anything.

I should have received the safety valve because they did not give it to me. I do not have to tell the authorities all that I did in the offense. Do I have to tell the police everything I did in order to obtain the safety valve. I did not tell the police all I did. I deny that I told you on Friday that I told the police all that I did.

I think I should have been declared a minimal participant because I am. I think I am a minimal participant because "What did I do wrong?" I am not a great criminal. I have never gone anywhere to get drugs. I deny the allegation in Government's Exhibit 23 that stated that the I had made six trips to Dallas to get drugs. When they got ready to sentence me my attorney read that to me (Exhibit 23) and I told her that was not true. I did not do it.

After I was sentenced I was surprised I received 87 months and I asked my attorney to file an appeal. My attorney stated that she would visit me in the Washington County Detention Center before they send me to Oklahoma but I never saw her again until today's date. I had hope she would see me but in 14 days they moved me to Oklahoma.

Cross:

I lived in Green Forrest prior to my arrest and I worked in construction for a man from Alabama but I do not remember his name. I have no W-2's and I was paid in case. I deny that the $200,000 found in my vehicle was mine. The money belonged to Mr. Castillo. The car was

titled in my name but I deny that I am the owner.

I deny that $20,000 found at Eric's fashion was mine and I do not know who it belonged to. I do not know Martin Cruz a/k/a Flacco. (After several questions from Mr. Hawkins and after admonition by the court) I do not remember if my attorney told me that there were witnesses who would testify that I was transporting drugs.

My attorney told me I would get 5 years and do 2 ½ and that happened before I pleaded guilty. The court asked if I had any objections to the sentence but I do not remember that my attorney did not object to the 87 month sentence.

After I was sentenced I was in touch with my wife by phone. I did not ask her to contact my attorney about the appeal. I had never spoken with my attorney by phone.

I do not remember the judge talking about the sentence before he imposed the sentence maybe because I was nervous. There was an interpreter at sentencing and I did not have any trouble understanding her.

Someone helped me complete the 2255 motion. Paragraph 13 states that my attorney told the judge she would appeal but that did not happen. I told the person I told my attorney to appeal. I told my attorney in open court. I do not remember if the interpreter was still present. No one asked me what I said. The judge had already stood up. My attorney told me that she would see me in Washington County.

I do not know the last name of the person who helped me prepare the petition. He spoke a little Spanish. I have filed several petitions but someone else helped. Not Anthony.

Mr. Mendoza admitted that he never wrote his attorney or any family member and complained that an appeal had not been filed.

**Janet Spencer testified as follows:**

I had more than one conversation concerning the plea agreement and it was my practice to go over the plea agreement. I showed him the table (Exhibit 24) which included the minimum and maximum he could receive.

After I received the presentence report I took it to the defendant and we read it and discussed it. I also discussed what my objections would be but I do not remember what my specific objections were.

The PSR does show that Ms. Spencer objected to paragraph 27 and the fact that the PSR did not treat the defendant as a minimal participant (Objection Number One), paragraph 24 and the computation of the base offense level, (Objection Number Two), and paragraph 25 and that the defendant did not receive the "safety valve" provision. (Objection Number Three).

It was obvious to everyone that the defendant was not cooperating and would not receive the safety valve but I did believe that the defendant was a minimal participant. I do not remember why I did not have the defendant testify at the sentencing hearing on why he should be classified as a minimal participant. I did not prepare the defendant to testify on that issue or offer any witnesses on his behalf on that issue.

I never spoke with the defendant about appealing his case. I deny that the defendant told me to appeal the sentence and I never said that I would discuss the appeal with the defendant at the Washington County Detention Center. There was no communication between the defendant and myself after the sentencing. I thought that, in the scheme of the organization, the defendant was a minimal participant. I presented no direct evidence but tried to prove that through cross examination of the investigator. While I did not discuss the appeal specifically with the

defendant after sentencing I generally reviewed his appeal rights prior to sentencing.

Cross:

    I am fluent in Spanish and all of my conversations with the defendant were in Spanish. I had no problems communicating with him. I told the defendant that he needed to be honest with law enforcement in order to get the safety valve but the defendant did not cooporate and would not even give law enforcement information that they already knew.

    I received Government's Exhibit 23 from Chris Plumlee on June 13, 2007. The email stated that the AUSA believed he had witnesses that the defendant had made a half dozen trips to Dallas to pick up large quantities of methamphetamine (ten pounds or more per trip). This affected my decision to put the defendant on the stand. I had negotiated a deal to limit the amount of drugs to 1.5 kilograms or about 3 pounds.

    On Government's Exhibit 24 when I circled 51-63 months that was assuming that I got all of my objections to the PSR approved by the court. I went over this with the defendant. I remember several discussion I had with the defendant concerning different sentencing scenarios. I did not promise the defendant that he would receive the sentencing deductions. I told the defendant I would present argument and the judge would decide. I made no promise that he would get a four or five year sentence.

    I encouraged the defendant to co-operate with law enforcement but the defendant said that he would take responsibility and he did not want to involve anyone else.

    I am sure I went over the email (Exhibit 23) with the defendant but I do not have a specific recollection. I did not hear any instruction from the client to appeal and I am positive that if he had made a request I would have heard it.

Ms. Spencer testified that if the defendant had asked her to appeal she would have filed the appeal and but would have filed an Andrews Brief because she did not think there was any merit to an appeal.

I would have never made the representation that he would have done one half of his time. There is no circumstances in the federal system where the defendant would have served one half of his sentence. I never received any communications, written or verbal, to appeal.

I discussed the issue of $200,000 found in the vehicle but the vehicle was at the house of the big guy, I cannot remember his name. The defendant always represented to me that the money was not his and he did not have anything to do with it.

**Donna Brown testified as follows:**

I am a United States Probation Officer in the Fayetteville Division and I did the PSR regarding Mr. Mendoza. I had information that the defendant did accept responsibiltiy but refused to co-operate with law enforcement on a debriefing.

I did not believe the defendant was eligible for a minor role classification because of the plea agreement to the "reduced" drug amount. He was not charged with the overall conspiracy but the defendant was only responsible for the what was discussed over the wire tap.

There are many factors that go into the classification of a minimal or minor participant and one is that he is under the direction of others and being instructed how they need to take care of business and I did not believe that was present in this case.

I also did the PSR in the Castillo's case and he was given a much higher quantity of drugs for his involvement. If the defendant had been held responsible for all the drugs in the conspiracy and been given a minor participant role we would have been at the same base level. I

-10-

felt he had a better argument for minor participation in the overall drug conspiracy.

I did not recall the specifics of the money found in the car and may not have had an impact on the drug quantity but it was a risk the defendant faced if it were converted to a drug quantity.

**Officer Florencio Revera testified as follows:**

I am an officer with the DEA and I was involved in the investigation of defendant and a drug organization moving multi pounds of methamphetamine from Mexico, Dallas and into this area and Missouri.  The leader of the gang, Castillo, was receiving about 14 pounds per week during our investigation.  We were listing to his phone and during that period four loads came in from Dallas and we were able to knock off one of the loads.

The Defendant was the subject of Title III interception of phone calls. Mr. Castillo talked to the defendant about delivering one pound of methamphetamine and sent Mr. Noreaga to Mr. Mendoza house were he picked up the methamphetamine and delivered it to another individual.

Mr. Castillo advised that he would put pounds of methamphetamine at Mr. Mendoza house.  We showed a photo line up to a suspect in Dallas who identified the defendant and stated that he would pick up pounds of methamphetamine and distribute it into northwest Arkansas.

Mr. Mendoza plead before anyone else and as people plead we began to gather more information. Twenty thousand dollars was found at Eric's Fashions in Green Forrest and on the money was written "Claudio".  Mr. Arizone stated that money belonged to Claudio Mendoza.

When the officer interviewed the defendant he refused to report on anyone else and just stated he wanted to accept his responsibility.  The defendant would not talk to me about anything. I asked the defendant if he wanted to talk to me and he said he did not.

The first time he refused to talk was after his arrest then his attorney stated that he wanted to speak with us and when we pulled him out of the cell we let him talk to his attorney and after he spoke with his attorney he told us he did not want to talk to us.

**Ineffective Assistance of Counsel**:

The defendant first contends that his retained attorney was ineffective for failure to file an appeal.

If an attorney has consulted with his client about an appeal, he will not be found ineffective unless he fails to follow "express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to § 2255 relief. *Barger v. United States*, 204 F.3d 1180, 1181 (8th Cir. 2000). Where the defendant expressly requests that his counsel file an appeal and counsel fails to do so, thereby depriving the defendant of his right to appeal, courts have not required a showing of prejudice or of likely success on appeal. See *Hollis v. United States*, 687 F.2d 257, 259 (8th Cir.1982); *U.S. v. Saucillo,* 2007 WL 522228, 3 (N.D.Iowa) (N.D.Iowa,2007)

For such a claim to succeed, however, the client must show that he instructed his counsel to file an appeal. *Id*. A bare assertion by the petitioner that he made such a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition. *Id.*

In the present case the Petitioner contends that he expressly told his lawyer that he wanted her to appeal his sentence and that he did this immediately following the sentence handed down by the district judge and while he and his attorney were still in the court room.  Ms. Spencer

contest this assertion and stated that her client never instructed her to appeal.

The defendant never complained to his wife or any other family member or made any written complaint concerning the failure of his attorney to appeal until the 2255 petition was filed on June 24, 2008. (Doc. 35). This was one year after judgment was handed down in the defendant's case. (Doc. 34).

The defendant's long silence during this time between judgment and filing the current petition does not support his contention that he gave a specific instruction for his attorney to appeal. The court also notes that the defendant asserted in his pleadings that his attorney represented to the court that she would file an appeal and failed to do so. (Doc. 35, p. 6). The defendant testified at the hearing that whoever prepared the petition for him had misstated what the defendant had told him happened.

The court also notes that the defendant testified that he was just in a hurry to get his plea over with and wanted to do his time in federal. The defendant had a very difficult time remembering his responses to the questions put to him by the court and yet he contends that he recalls telling his attorney specifically that he wanted to appeal. The defendant's testimony in this regard is not compelling while Ms. Spencer was clear that she had appealed a number of convictions in the past and if the defendant would have told her he wanted to appeal she would have done so.

The court also notes that the defendant maintained that he had been promised he would do five years and that he would serve only two and one half years on that sentence. Ms. Spencer denied that she ever made such representations to the defendant and that such a disposition would not be possible in the federal system. The court notes that the defendant was housed in the

Washington County Detention Center and it appears he has confused some of the information he absorbed while housed with state inmate with his federal charges.

The weight of the evidence does not supports the defendant's contention that he gave a specific instruction to his attorney to file an appeal.

This factual resolution by the court does not end the inquiry in this particular case since it does not appear that the defendant's lawyer consulted with the defendant concerning an appeal after he was sentenced .

The Supreme Court rejected the bright line rule that required counsel to file an appeal unless the defendant specifically instructs otherwise. See *Roe v. Flores-Ortega*, 528 U.S. 470 @ 478, 2000. The court stated that "[I]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. See supra, at 1034 and this page. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Roe v. Flores-Ortega*, Id.

Counsel has a constitutionally imposed duty to consult with the defendant about an appeal

-14-

when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *Roe v. Flores-Ortega*, Id.

In this case there is no dispute that Ms. Spencer did not consult with her client about an appeal after sentencing. Ms. Spencer acknowledged in the evidentiary hearing that the better practice would be for her to discuss the issue of appeal with her client forthwith and to have the client sign a form which declares his intent, but, since this was not done, the court is left to inquire as to whether there were nonfrivolous grounds for an appeal.

## Safety Valve:

The Defendant did not qualify for the "safety valve" provision. Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met. 18 U.S.C. § 3553(f). *U.S. v. Bonilla-Filomeno,* 579 F.3d 852, 858 (C.A.8 (Neb.),2009)

The final paragraph of the statutes provides that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement. " 18 U.S.C. § 3553(f)(5).

DEA Special Agent Rivera testified at the sentencing hearing that after his arrest,

Petitioner would not respond to the street name (Mr. Chapparitto) that he went by when officers called to him. (Sentencing Tr., pp. 28-29) The officer stated that they knew this was the Defendant's street name because they had intercepted wire transmissions between Castillo and the Defendant when the Defendant used that name, and on the date named in the indictment they intercepted a telephone conversation between Castillo and a third party telling the third party to go to Chapparitto's house. The police then followed the third party who went to Defendant's home and picked up a quantity of methamphetamine.

Petitioner's attorney allowed him to be interviewed by the officers in the hopes of securing a downward departure. At this interview, Petitioner would give no information, stating that he did not want to cause problems for anybody else. (Sentencing Tr.pp. 29-31) Based upon his investigation, Agent Rivera testified that Petitioner had substantial knowledge of the drug trafficking but would not reveal it. (Sentencing Tr., pp. 33-34) Petitioner is alleged to have made trips to Dallas to pick up methamphetamine to bring into Northwest Arkansas. He made numerous deliveries in Northwest Arkansas of pound quantities of methamphetamine; however, he refused to disclose any of this information to the DEA. His car had $200,000 hidden in a secret compartment but he would give the DEA no information concerning that money.

The Defendant and the defendant's attorney both testified at his hearing on the 2255 motion that he did not provide information to the DEA. It is abundantly clear that this claim would have no merit and the attorney could not be faulted for failure to consult with the defendant on an appeal concerning this issue.

### Minimal Participation:

The failure of the defendant's attorney to consult with him concerning his failure to

obtain a downward departure for minimal participation is a more complex issue but still without merit.

Under U.S.S.G. § 3B1.2(a), a defendant may be eligible for a role reduction if his culpability for the relevant conduct is minimal in comparison to that of other participants, but the mere fact that a defendant is less culpable does not entitle him to the reduction. See *United States v. Johnson*, 408 F.3d 535, 538-39 (8th Cir.2005). The minimal participant reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n. 4. *See U.S. v. Jenkins-Watts,* 574 F.3d 950, 960 (C.A.8 (Mo.),2009). Minimal participants are those with "insignificant" involvement in the criminal activity. *United States v. Boksan*, 293 F.3d 1056, 1058 (8th Cir.2002).

Furthermore, in determining whether a defendant qualifies as a minimal participant, a court may consider whether certain elements of the defendant's conduct "exceeded the minimum necessary to be found guilty of the offenses." *See U.S. v.Yirkovsky*, 338 F.3d 936 at 942 (C.A.8 (Iowa), *2003; U.S. v. Goodman,* 509 F.3d 872, 877 (C.A.8 (Neb.),2007).

Here the defendant was charged with a conspiracy that spanned August 17, 2006 to October 18, 2006 with Baudilio Castillo. (Doc. 12). In the plea agreement the factual predicate provided for one transaction involving the Defendant and Mr. Castillo which occurred between August 4, 2006 and August 22, 2006. (Doc. 30, p. 4). At the sentencing hearing Officer Revera testified that the Defendant made multiple trips to Dallas to pick up substantial quantities of methamphetamine. (Doc. 37, p. 33-34). Ms. Spencer did not argue to the court that the defendant's involvement in the single transaction was minimal but that his participation in the overall conspiracy was minimal. (Doc. 37, p. 41). The court, however, did not accept this

argument and seemed to stress more his involvement in the current transaction than the overall conspiracy.(Doc. 37, p. 49-50).

The burden of establishing minimal-participant status rests with the criminal defendant. *See United States v. Bueno*, 443 F.3d 1017, 1022 (8th Cir.2006). The Defendant did not testify at his sentencing hearing but his attorney asserted that they would rely on the testimony of the officers. (Doc. 37, p. 21).

Ms. Brown testified at the evidentiary hearing that she did not believe the defendant was eligible for a minor role classification because of the plea agreement to the "reduced" drug amount. She did not compute his base level upon the amount of drugs associated with the overall conspiracy but only upon the pound that was discussed over the wire tap and picked up at his house on the date alleged in the indictment which resulted in a base level amount of 32.

The Defendant's named co-conspirator, Baudilio Castillo, was sentenced to 121 months on March 13, 2008. (Doc. 153). The PSR for Mr. Castillo was prepared by Donna Brown, and provided a base offense level of 38 because the conspiracy involved at least 1.5 kilograms or more of actual methamphetamine.

Officer Revera testified at the hearing that he was investigating a large drug trafficking operation. The leader of the gang, Castillo, was receiving about 14 pounds per week during the investigation. He was listing to Mr. Castillo's phone and during that period and that Castillo and the Defendant had numerous conversations concerning drug trafficking. That four loads of methamphetamine came in from Dallas and they were able to interdict one of the loads.

He testified at the defendant's sentencing hearing that "during surveillance, we were up on a wire, and one of his co-defendant directed another co-defendant to to Mr. Chaparitto's house

to pick up a pound of methamphetamine.  We surveil him...he drove right to Mr. Claudio Mendoza's residence, picked up to be the pound of methamphetamine, and then took it to the Missouri to Iowa areas to be distributed". (Doc. 37, p. 35).

Officer Revera also testified that $200,000 was found in a car which was titled in the name of the defendant.  (Doc. 37, p. 31). At the evidentiary hearing the defendant denied any knowledge of the money and stated that he did not know who it belonged to.  The government sought and obtained forfeiture of this money in the case of United States v. Baudilio Castillo, Donis Castillo, Magda Castillo, Abner Reyes and Silas Noriega. (See 5:06-cr-50054; Doc. 151).

The Defendant stated at his evidentiary hearing that he never went anywhere to get drugs and disputed the allegations in Government's Exhibit 23 which stated that the government had witnesses that would testify that the defendant had made multiple trips to Dallas to pick up drugs. The defendant failed to explain how he obtained the methamphetamine he delivered on August 17, 2006 or the money that was recovered in his car and in fact refused to co-operate in any way with law enforcement.

The Defendant's attorney testified that, while she thought the defendant was a minimal participant, she would have filed an Anders Brief if the Defendant had asked her to appeal because she thought any appeal to be without merit. *See Anders v. California*, 386 U.S. 738 (1967).  The court believes that Ms. Spencer's assessment of the merit is appropriate in light of the fact that the police had heard numerous conversations between the defendant and Mr. Castello concerning efforts to deliver drugs in the area, that Mr. Noreaga was directed to the Defendant's home to deliver one pound of methamphetamine, that the Defendant did deliver that amount to Mr. Noreaga, and that $200,000 was discovered in a secret compartment in an

automobile titled in the Defendant's name.

It cannot be ineffective assistance not to raise a meritless argument. *Larson v. U.S.* 905 F.2d 218, 219 (C.A.8 (Minn.),1990).  It appears to the court that the argument that the Defendant would have been entitled to a four level reduction as a minimal participant was without merit and the attorney cannot be found ineffective for failing to raise that issue on appeal when the defendant did not specifically direct her to appeal.

### III. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. § 2255, be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 21st day of December 2009.

                                                    /s/ J. Marschewski
                                                  HONORABLE JAMES R. MARSCHEWSKI
                                                  UNITED STATES MAGISTRATE JUDGE